IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGAR RIVERA NARVAEZ,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Civil No. 11-2167 (BJM)

**OPINION AND ORDER**

In an amended complaint, Edgar Rivera Narvaez sued the United States under the Federal Tort Claims Act for $4,000 in damages to his car and house, and for his emotional distress, all resulting from a collision between a U.S. Postal Service vehicle and several vehicles, including Rivera's parked car, a Volkswagen Jetta. (Docket No. 22). The parties consented to proceed before a magistrate judge. (Docket No. 20). Before the court is the government's motion for summary judgment. (Docket No. 27 and Docket No. 27-1, or "Def. Mem."). Rivera opposed. (Docket No. 30, or "Pl. Mem."). For the reasons that follow, the motion for summary judgment is **DENIED.**

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

The factual record is summarized here using the parties' Local Rule 56 statements of uncontested facts.[1] The government's statement (Docket No. 27-2, or "Def. St.,"), Rivera's opposition (Docket No. 31, p. 1-4, or "Pl. Opp."), and Rivera's additional statement (Docket No. 31, p. 4-5, or "Pl. St.") have been considered. The government did not oppose Rivera's additional statement of fact; to the extent it is supported by record evidence, it is **deemed admitted**. *See* Local Rule 56(e).

---

[1] Local Rule 56 requires parties at summary judgment to supply brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

Rivera is a former officer of the Puerto Rico Police Department, but is now an employee of the Federal Bureau of Prisons. Pl. St., ¶ 1. Sometime in early 2010, Rivera complained to his local letter carrier, Angel Ramos, that he should drive slower around the neighborhood. Pl. St., ¶ 4. At around 3:50 p.m. on September 7, 2010, Ramos was driving his mail route. Def. St., ¶ 1. At an intersection, a collision occurred involving Ramos's mail truck and a car driven by a man named Hector J. Vargas. Def. St., ¶ 2; Pl. St., ¶ 2. Rivera never saw the initial impact, though he heard it. Def. St., ¶ 4. Rivera heard the sound of wheels spinning, and rushed outside to see what was happening. Pl. St., ¶ 2.

The parties offer conflicting versions of how this collision occurred. Drawing on his past experience as a police officer, Rivera believes that Vargas's car was coming to a stop, and that Ramos hit him. He bases this view on the apparent damage to each car and their positioning after the accident. Pl. Opp., ¶ 2. The responding officer, on the other hand, wrote in an accident report that Vargas failed to stop at the intersection.[2] Def. St., ¶ 2. The officer's report was written after interviewing eyewitnesses; however, Rivera disagrees with its conclusion. Def. St., ¶ 9; Pl. Opp., ¶ 9.

In any event, Ramos was not wearing a seatbelt. Def. St., ¶ 8. Ramos lost control and hit two parked cars, including Rivera's Jetta. Def. St., ¶ 3. The mail truck had jumped the curb by this time. Pl. St., ¶ 2. Rivera saw Ramos in the mail truck with the door open and with his hands on the wheel, though he was barely hanging on. Def. St., ¶ 5; Pl. Opp., ¶¶ 3, 5. Ramos hit the Jetta, which in turn hit Rivera's house and damaged it. Def. St., ¶ 6; Pl. St., ¶ 2. Ramos was ejected upon impact, but immediately got up and walked over to park the mail truck. Def. St., ¶ 6.

---

[2] Although the report itself has not been translated into English and must be disregarded, *see* Local Rule 5(g), the government relies without objection on Rivera's English-language deposition transcript, during which he reads from the report. *See, e.g.*, Docket No. 27-5.

According to the police report, Vargas was given *Miranda* warnings and subjected to a "Breathalyzer" test indicating a .102% blood alcohol content. Def. St., ¶ 7. He was charged with misdemeanor negligence in Commonwealth court, but no probable cause was found. Pl. St., ¶ 3. Charges of driving under the influence were not dismissed. Pl. St., ¶ 3. Ramos was not cited by the Puerto Rico Police. Def. St., ¶ 8. On February 7, 2011, Rivera filed an administrative claim for $4,000. Def. St., ¶ 10.

## DISCUSSION

The government argues that Rivera cannot establish negligence on this record. To resolve questions of liability, the FTCA applies the law of the place of injury. *Wojciechowicz v. United States*, 582 F.3d 57, 66 (1st Cir. 2009). In Puerto Rico, negligence cases are governed by Article 1802 of Puerto Rico's Civil Code. 31 L.P.R.A. § 5141. Under Puerto Rico law, the elements of negligence are (1) injury, (2) breach of duty, and (3) proximate causation. *Vásquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007). Proximate cause depends on (a) actual cause and (b) foreseeability. *Id.* at 49 n.6.

The government challenges Rivera's theory of causation on three grounds. First, the government contends that Ramos only lost control as a result of a drunk driver crashing into him, such that Rivera must prove the failure-to-buckle was an "intervening cause" of the accident. Def. Mem. at 4. However, the government fails to explain how this alters the analysis; whether Ramos's failure-to-buckle was an intervening cause with respect to the other driver's responsibility poses the same ultimate question as whether Ramos's failure to buckle caused the accident at all. *See also Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir. 1987) (citing *Nuñez Méndez v. P.R. Water Res. Auth.*, 93 P.R.R. 168, 178 (1966)) (describing doctrine of intervening cause under Puerto Rico law).

Next, the government argues that there is no evidence of actual cause—e.g., how wearing a seatbelt would have prevented Ramos from losing control of the mail truck. *Id.* But Rivera testified that Ramos's shoulders were leaning out of the car's open door

immediately before hitting his car. Docket No. 31-1 at 7–8. Viewed in the light most favorable to the non-moving party, this version of events permits an inference that Ramos was not fully in control of the vehicle, given that drivers in control do not often let their shoulders just hang out of doors while careening towards a parked car.

Finally, the government asserts that Rivera cannot prove foreseeability because the chain of events here—from failing to buckle up, to having an accident, to losing control, to hitting Rivera's parked car and damaging Rivera's home—was too attenuated. Def. Mem. at 4–5. But "[t]he rule of foreseeability does not require that the precise risk or exact result that occurred should have been foreseen; rather, the essential factor is that a person should have foreseen consequences of the general kind that occurred." *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 972 (1st Cir. 1991) (citing *Gines v. P.R. Aqueduct & Sewer Auth.*, 86 P.R.R. 490, 495 (1962)). Here, a fact-finder could reasonably conclude that the general consequences were foreseeable at each step in the chain. As a matter of common sense, the combination of driving with one's door open and without a seatbelt creates a foreseeable risk of losing control after an accident. Losing control of a moving vehicle, in turn, can rationally be foreseen to cause damage to others' property.

## CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 7th day of August, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge